ELECTRONICALLY FILED - 2022 Apr 08 4:47 PM - RICHLAND - COMMON PLEAS - CASE#2021CP4006267

| | |
|---|---|
| **STATE OF SOUTH CAROLINA**<br>**COUNTY OF RICHLAND** | **IN THE COURT OF COMMON PLEAS**<br>**FOR THE FIFTH JUDICIAL CIRCUIT** |
| Krystian Singletary, Ece Erkek, and<br>Kelsey Sunde,<br><br>          Plaintiffs,<br><br>v.<br><br>King Crab Boiling Seafood and Bar, Inc.,<br>John Lin, David Chen, Blake Williams,<br>David Tan, and Wei Long,<br><br>          Defendants. | Civil Action No.: 2021-CP-40-06267<br><br><br>**AMENDED SUMMONS**<br>(Jury Trial Demanded) |

## TO: THE DEFENDANTS ABOVE-NAMED:

YOU ARE HEREBY SUMMONED and notified that an action has been filed against you in this court. Within 30 days after service hereof, exclusive of the day of such service, you must respond in writing to this Complaint by filing an Answer with this court. You must also serve a copy of your Answer to this Complaint upon the Plaintiff or the Plaintiff's Attorney at the address shown below. If you fail to answer the Complaint, judgment by default could be rendered against you for the relief requested in the Complaint.

(Signature Block on Following Page)

ELECTRONICALLY FILED - 2022 Apr 08 4:47 PM - RICHLAND - COMMON PLEAS - CASE#2021CP4006267

Respectfully Submitted,

**BURNETTE SHUTT & McDANIEL, P.A.**

By: s/Jack E. Cohoon
Jack E. Cohoon (SC Bar No. 74776)
912 Lady Street, Second Floor (29201)
Post Office Box 1929
Columbia, South Carolina 29202
(803) 904-7920 (telephone)
(803) 904-7910 (facsimile)
jcohoon@burnetteshutt.law

**DICKEY LAW GROUP, LLC**

By: s/Joseph D. Dickey, Jr.
Joseph D. Dickey, Jr. (SC Bar No.
100064)
440 Center Street
West Columbia, SC 29169
(803) 380-5575 (telephone)
(803) 380-5576 (facsimile)
joseph@dickeylawsc.com

**ATTORNEYS FOR PLAINTIFF**

ELECTRONICALLY FILED - 2022 Apr 08 4:47 PM - RICHLAND - COMMON PLEAS - CASE#2021CP4006267

| | |
|---|---|
| **STATE OF SOUTH CAROLINA**<br>**COUNTY OF RICHLAND** | **IN THE COURT OF COMMON PLEAS**<br>**FOR THE FIFTH JUDICIAL CIRCUIT** |
| Krystian Singletary, Ece Erkek, and<br>Kelsey Sunde, | Civil Action No.: 2021-CP-40-06267 |
| Plaintiffs, | |
| v. | **FIRST AMENDED COMPLAINT** |
| King Crab Boiling Seafood and Bar, Inc.,<br>John Lin, David Chen, Blake Williams,<br>David Tan, and Wei Long, | (Jury Trial Demanded) |
| Defendants. | |

Plaintiffs Krystian Singletary, Ece Erkek, and Kelsey Sunde (hereinafter collectively referred to as "Plaintiffs") complaining of Defendants King Crab Boiling Seafood and Bar, Inc. (hereinafter referred to as "Yummi Crab," John Lin ("Lin"), David Chen ("Chen"), Blake Williams ('Williams"), David Tan ("Tan"), and Wei Long ("Long"), would respectfully show unto this honorable Court as follows:

## INTRODUCTION

1.    This action is brought pursuant Title VII of the Civil Rights Act of 1964 (sex and race discrimination, and retaliation) the South Carolina Payment of Wages Act, S.C. Code Ann. § 41-10-10 *et seq.*, and South Carolina common law. Defendant Yummi Crab subjected its female employees to severe and pervasive sexual harassment and sex discrimination. Defendant Yummi Crab also subjected Plaintiffs to a racially discriminatory environment in which racial epithets were tolerated and favored Asian employees in promotion and compensation. When Plaintiffs complained of sex and race discrimination, Defendant Yummi Crab retaliated by making their continued employment intolerable,

1

ELECTRONICALLY FILED - 2022 Apr 08 4:47 PM - RICHLAND - COMMON PLEAS - CASE#2021CP4006267

ultimately either discharging or constructively discharging them. Defendant Williams; an employee of Defendant Yummi Crab, committed the tort of Assault against Plaintiff Singletary. Finally, Defendant Yummi Crab, and Defendants Lin, Chen, Tan, and Long made unlawful deductions from Plaintiff's wages for supposed loss of equipment such as crab crackers and errors in orders.

## PARTIES AND JURISDICTION

2.     Plaintiff Krystian Singletary is a black female and a citizen and resident of Richland County, South Carolina. Plaintiff Singletary worked for Defendant beginning on or about July 1, 2019, until March 9, 2020.

3.     Plaintiff Ece Erkek is a female of Turkish descent and a citizen and resident of Richland County, South Carolina. Plaintiff Erkek worked for Defendant beginning on or about September 15, 2019, until March 20, 2020.

4.     Plaintiff Kelsey Sunde is a biracial (black and white) female and is a citizen and resident of Richland County, South Carolina. Plaintiff Sunde worked for Defendant beginning on or about September 15, 2019, until February 2020.

5.     Defendant King Crab Boiling Seafood and Bar, Inc. (hereinafter referred to by its trade name, "Yummi Crab") is a corporation organized under the law of South Carolina.

6.     Defendant John Lin ("Lin") is, upon information and belief, an Asian American male and a resident of Richland County, South Carolina.

7.     Defendant David Chen ("Chen") is, upon information and belief, an Asian American male and a resident of Richland County South Carolina.

8.     Defendant Blake Williams ("Williams") is, upon information and belief, a white male and a resident of Richland County South Carolina.

2

ELECTRONICALLY FILED · 2022 Apr 08 4:47 PM · RICHLAND · COMMON PLEAS · CASE#2021CP4006267

9.      Defendant David Tan ("Tan") is, upon information and belief, Asian American and a resident of Richland County, South Carolina.

10.     Defendant Wei Long ("Long") is, upon information and belief, Asian American and a resident of Richland County, South Carolina.

11.     Defendant Yummi Crab, at all times relevant to, has maintained a principal place of business in Richland County at 150 Forum Drive, Columbia, South Carolina 29223 and, doing business as "Yummi Crab," operated a restaurant at that location.

12.     Plaintiffs have exhausted their administrative remedies under Title VII prior to commencing this action.

### FACTUAL ALLEGATIONS

### As to Plaintiff Krystian Singletary

13.     Plaintiffs re-allege the allegations above as if repeated verbatim herein.

14.     Plaintiff Singletary is an African American female.

15.     Plaintiff Singletary began her employment with Defendant on or about July 1, 2019, as a restaurant server.

16.     Shortly after Plaintiff Singletary's hire, Kitchen Manager, Defendant Lin, began making inappropriate comments and advancements toward her.

17.     In July 2019, Lin said to Plaintiff Singletary, **"I've never been with a black girl before. Will you be my girlfriend?"** Plaintiff Singletary responded, "You have a wife, John." He responded, **"I don't have a girlfriend though."**

18.     Lin continued to make comments to Plaintiff Singletary and to other female coworkers, such as **"You can do me,"** in regard to female employees asking him if he

3

ELECTRONICALLY FILED - 2022 Apr 08 4:47 PM - RICHLAND - COMMON PLEAS - CASE#2021CP4006267

could do something work related for them. Plaintiff Singletary heard comments like this from Lin nearly daily for three to four months until at least January or February 2020.

19.    In mid-August 2019, during the hiring process for the assistant manager position, Long, an owner of the restaurant, said "**We are actually looking for a male who is really anal for the management position**." Plaintiff Singletary was shocked to hear someone express this bias so openly. However, she did not feel she could speak up at that time.

20.    Despite the discriminatory statement, Defendant Yummi Crab promoted Plaintiff Singletary to an assistant manager position in early September 2019, However, shortly after Plaintiff Singletary's promotion, she found her authority was undermined, questioned, and blatantly ignored because she was a woman.

21.    In October 2019, Plaintiff Singletary had a conversation with one of her employees, Defendant Williams, about his repeated tardiness. She sent him home, telling him he was terminated. Williams went to his car, grabbed a tire iron, and approached Plaintiff Singletary in a threatening manner. He was angry, stomping his feet, holding the tire iron, and came within three feet of Plaintiff Singletary. He then picked up his things and left. Plaintiff Singletary reported this to Defendant Chen, who said he didn't understand what the big deal was. Defendant reversed Plaintiff Singletary's decision to terminate Williams and let him come back to work almost immediately. Plaintiff Singletary asked Chen not to make her work with Williams anymore because she felt unsafe around him. Chen agreed but then promptly broke his agreement, leaving Plaintiff Singletary to work in close confines with a man that threatened her with a tire iron.

ELECTRONICALLY FILED - 2022 Apr 08 4:47 PM - RICHLAND - COMMON PLEAS - CASE#2021CP4006267

22.    At the October 26, 2019, Employee Halloween Party, kitchen manager Lin said "**nigger**" while singing a karaoke song. Plaintiff Singletary and several other employees told him that was inappropriate and that he needed to stop. Even after Plaintiff Singletary asked him to stop, on at least two other occasions in November and December 2019, Lin used the word "**nigger**" while singing karaoke in the restaurant.

23.    In November 2019, Chen told Plaintiff Singletary to join in him in the office for a chat. The office is very small. Chen locked the door though there was no reason it should be locked to have a simple conversation. Plaintiff Singletary discussed some issues about the restaurant and as they were talking, Chen began touching Plaintiff Singletary on her shoulder. Plaintiff Singletary noticed that Chen would frequently do this during conversations, which she found inappropriate and uncomfortable.

24.    In early November 2019, Lin was being extremely loud in the kitchen. Plaintiff Singletary walked to the back and called his name. At this point they were not even a foot away from one another; he ignored Plaintiff Singletary until she called his name two more times. He looked up to Plaintiff Singletary's and said, "**suck my dick?**" Plaintiff Singletary responded, "excuse me?" He said "Hmm?" with wide eyes as if he was oblivious. Plaintiff Singletary objected to this gross and inappropriate statement and asked him to go outside to complete the task he had been doing so loudly before. He continued to make reference to oral sex. Plaintiff Singletary left the kitchen upset and shocked. Long, upon information and belief Defendant's owner, was in the kitchen when this conversation occurred, no more than 15 feet away. He heard the conversation but did not acknowledge it. Immediately after Lin directed Singletary to perform a sexual act on him, several coworkers noticed Plaintiff Singletary was upset and spoke with her.

5

ELECTRONICALLY FILED - 2022 Apr 08 4:47 PM - RICHLAND - COMMON PLEAS - CASE#2021CP4006267

Plaintiff Singletary left momentarily to gather her composure and returned to finish her shift. Lin noticed Plaintiff Singletary was upset and gave her a half-hearted apology.

25.    Two weeks later Chen and Long came to Plaintiff Singletary and asked her about the incident. Plaintiff Singletary told them she was uncomfortable working with Lin and that she would not speak to him unless it was directly related to work. They defended Lin and claimed Plaintiff Singletary misheard him. Lin's offensive comment that day was consistent with the types of comments that he made to and around women almost daily.

26.    Instead of disciplining Lin or otherwise addressing his behavior, Defendant's management trained him to be front of the house manager, which would make him Plaintiff Singletary's manager and direct report. He was also given the authority schedule shifts.

27.    On January 25, 2020, at a weekly meeting, Lin said, "Awkwardness is felt. I would just like to apologize for if you misheard me. I don't think I said that though." Plaintiff Singletary again said that she was uncomfortable working with Lin after what he had said.

28.    In late January 2020, Plaintiff Singletary noticed that Chen was saying things to her and her coworkers indicating he wanted her to quit. He told Plaintiff Sunde that she may receive a promotion when Plaintiff Singletary leaves. He told Plaintiff Singletary that money he claimed she owed Defendant would no longer be due after she left the company. Plaintiff Singletary could tell that he didn't want her there anymore.

29.    On January 28, 2020, Lin and Plaintiff Singletary were working in the front of house when he was hovering over her; she asked him to focus on his responsibilities.

6

ELECTRONICALLY FILED - 2022 Apr 08 4:47 PM - RICHLAND - COMMON PLEAS - CASE#2021CP4006267

He became upset and, after Plaintiff left, he told the bartender, Amanda, **"I'm tired of dealing with these fuckers at the front."**

30.    On January 31, 2020, Lin told Plaintiff Singletary to put in her two weeks' notice if she didn't want to work around him. He said this twice. Chen was there and said nothing.

31.    In early February 2020, Chen insisted that Plaintiff Singletary pay him in cash for money he claimed she owed Defendant Yummi Crab due to a clock-in/clock-out issue from October 2019. Plaintiff Singletary told him she did not have funds to cover that. He started to cross-examine Plaintiff Singletary about her finances and said, "if you don't pay this back, I don't have many options here." Chen told Plaintiff Singletary, "don't come back until your name is on the schedule." He then went to the bar and started discussing Plaintiff Singletary with Shante McCray ("McCray"), another employee.

32.    On February 6, 2020, Chen demanded that Plaintiff Singletary pay for an order that was sent back due to a supposed error. Plaintiff Singletary refused to pay for the food. Chen had repeatedly, during her employment, tried to get Plaintiff Singletary to pay money from her wages for the restaurant's expenses, and each time, Plaintiff refused.

33.    In February 2020, Defendant began scheduling Plaintiff Singletary for fewer hours.

34.    On March 9, 2020, Defendant Tan, who had recently been brought in and introduced as a new manager, called Plaintiff Singletary to tell her she was being terminated. She went to the restaurant to pick up her check from Chen. Plaintiff Singletary asked him why she was being terminated. He said, "I don't know. It's just not working out."

7

ELECTRONICALLY FILED - 2022 Apr 08 4:47 PM - RICHLAND - COMMON PLEAS - CASE#2021CP4006267

35.    It was widely known among female employees that they would not be protected by Defendant and that speaking up would only result in punishment.

## As to Plaintiff Ece Erkek

36.    Plaintiffs re-allege the allegations above as if repeated verbatim herein.

37.    Plaintiff Erkek is a female of Turkish descent.

38.    Plaintiff Erkek began her employment with Defendant on or about September 15, 2019, as a restaurant server.

39.    In late November 2019, kitchen manager Defendant Lin, manager Braxton Wallace ("Wallace"), cook Rakim, and Plaintiff Erkek were having a conversation at the bar. Lin, who was Plaintiff Erkek's supervisor, asked if she would have sexual encounters with him for money. Plaintiff Erkek said, "you're my boss. Why are you asking?" He asked again, thirty seconds later, and Plaintiff Erkek gave the same response. The conversation died down and the topic changed, but Plaintiff Erkek felt very put off and uncomfortable. Plaintiff Erkek was waiting for a friend to get off work and left as soon as she could.

40.    Braxton reported this comment to her managers. Later that week, general manager Chen, came to Plaintiff Erkek about Lin's inappropriate comments. He had this conversation with Plaintiff Erkek at the hostess stand at the front of the restaurant. Lin was nearby, within hearing distance, only a few feet away. Chen told Plaintiff Erkek he thought the comments were okay because they were funny and because Lin had said them after hours at the bar. Plaintiff Erkek disagreed, stating even though the statement occurred after hours, it is not okay, particularly because it was her boss making the comment.

8

ELECTRONICALLY FILED - 2022 Apr 08 4:47 PM - RICHLAND - COMMON PLEAS - CASE#2021CP4006267

41.    In early January 2020, Plaintiff Erkek had an issue with her license plate related to her separation from her husband. Plaintiff Erkek had to tell Lin about the issue because she had to leave her shift to handle it. The next day, Lin pried into her marriage and asked why they were separated. He said, "if I was your husband, I'd be grateful for you." Plaintiff Erkek felt uncomfortable with this statement. She didn't want to be questioned about the details of her separation, especially by him.

42.    In late January 2020, Kai, a male server, became very upset at Plaintiff Erkek due to a manager's floor plan error that put her at the top of the list. He started speaking very aggressively towards Plaintiff Singletary, and then toward Plaintiff Erkek. He attacked Plaintiff Erkek's work ethic in very angry tones and belittled Plaintiff Erkek to her superiors in her presence. He was hostile toward other women as well. Kai seemed to have a real problem working with women and directed his anger at them. Plaintiff Erkek spoke with Lin, the manager present at the time, but nothing was done other than to make Kai apologize. To Plaintiff Erkek's knowledge, Kai is still employed by Defendant.

43.    On February 10, 2020, Defendant Chen held a meeting with the entire staff to address the concerns that multiple employees had raised about sexual harassment and discrimination. Defendant Lin gave a forced apology. He said he wanted to apologize to anyone he has made uncomfortable with the things he said. This made Plaintiff Erkek feel more uncomfortable, because she didn't think this should occur in front of the entire staff. He made eye contact with Plaintiff Erkek. Plaintiff Erkek didn't want to be singled out, so she looked down. Employees at the meeting began speaking up about how Chen favored male employees and didn't address sexual harassment.

ELECTRONICALLY FILED - 2022 Apr 08 4:47 PM - RICHLAND - COMMON PLEAS - CASE#2021CP4006267

44.    In February 2020, Defendant Yummi Crab brought back a former manager, Defendant Tan, who acted as manager, bartender, and server. He received a salary and tips unlike other employees.

45.    One employee, who upon information and belief holds an ownership interest in Defendant Yummi Crab, Yi, would stare at Plaintiff Erkek and other female employees with his fist balled up in a threatening manner if he disagreed with how an employee was doing something. For example, in late February 2020, there was large rainstorm. Plaintiff Erkek opened the door to see how hard it was raining. Yi came from behind her, with his fisted up, and stood behind her staring at her. Plaintiff Erkek and other employees told Chen how Yi's aggressive behavior made them feel but nothing was ever done.

46.    Plaintiff Erkek expressed her concerns about Yi's behavior to Wallace, one of her managers. She also spoke with Chen about it. After that, Plaintiff Erkek found her shifts cut from five a week to two or three a week in retaliation for her complaining about Yi's aggressive behavior toward her.

47.    Defendant maintained a hostile work environment for women where men, including members of management, were allowed to behave however they wanted with little or no consequence.

48.    In addition to the prevalent sexual harassment, male employees were allowed to arrive late without consequence, wear ripped jeans without consequence, and say anything they want to female employees and management without consequence. Management was much quicker to discipline female employees. Female employees found their shifts cut before male employees.

10

ELECTRONICALLY FILED - 2022 Apr 08 4:47 PM - RICHLAND - COMMON PLEAS - CASE#2021CP4006267

49.    Plaintiff Erkek observed that Asian employees were treated more favorably than others. She also noticed that African American females seemed to be treated the worst in terms of confrontations, schedule cuts, discipline, and harsh enforcement of rules.

50.    Plaintiff Erkek was constructively discharged and left when she could no longer work in this environment where she was subject to a racially and gender based hostile work environment and discrimination.

### As to Plaintiff Kelsey Sunde

51.    Plaintiffs re-allege the allegations above as if repeated verbatim herein.

52.    Plaintiff Sunde is a biracial (black and white) woman.

53.    Plaintiff Sunde began her employment with Defendant on or about July 1, 2019, as a restaurant server.

54.    Ever since Plaintiff Sunde was hired, Defendant Chen, the general manager, would touch her on her shoulders and lower back inappropriately. On two occasions, he walked behind her, put his arms around her, and tried to "pick her up," as he proceeded to thrust his private area on her while attempting to pick her up. The first time he did this was in December 2019, and it occurred in the alley way between the dining area and the kitchen. He did it again a couple weeks later, in January 2020. Plaintiff Sunde was so bothered and embarrassed that she turned around and picked him up and told him to never touch her again.

55.    Defendant Lin, Kitchen Manager, frequently made extremely inappropriate comments, such as **"suck my dick,"** **"will you be my girlfriend?"** and **"I have a wife already but I don't have a girlfriend."** He also repeatedly called Plaintiff Sunde **"a bitch."**

11

ELECTRONICALLY FILED - 2022 Apr 08 4:47 PM - RICHLAND - COMMON PLEAS - CASE#2021CP4006267

Plaintiff Sunde heard him make similar comments to other employees, including Plaintiff Singletary. These comments began in or around November 2019 and got worse as he got more comfortable around Plaintiff Sunde. They continued for months, unaddressed.

56.    Plaintiff Sunde had been asking for a management position since the beginning of her employment with Defendant. Initially, management claimed there were no open positions for her. In October 2019 Plaintiff Sunde had another conversation with Chen about a management position. He said that the next to be promoted was going to be "**one of us**" (referring to being an Asian male). In January 2020, another employee, David Tan (who is Asian), was promoted to the management position that Plaintiff Sunde had sought.

57.    Regarding all these instances, Plaintiff Sunde made complaints to managers Plaintiff Singletary and Miesha Davis ("Davis") and kept them fully aware. Plaintiff Sunde also spoke with manager Wallace in January 2020. Management was fully aware of the behavior of Chen and Lin, as well as Plaintiff Sunde's concerns about race and sex discrimination in promotions.

58.    On or about February 10, 2020, Plaintiff Sunde participated in a meeting where employees discussed the inappropriate behavior and comments of Defendant Yummi Crab's male employees and managers. Plaintiff Sunde participated in the meeting and spoke up about Lin's inappropriate and offensive comments. Chen defended Lin.

59.    In early February 2020, Plaintiff Sunde found that she was receiving fewer shifts and hours. Plaintiff Sunde would typically be scheduled from 35-38 hours a week. She was now being scheduled for 20-25 hours a week.

ELECTRONICALLY FILED - 2022 Apr 08 4:47 PM - RICHLAND - COMMON PLEAS - CASE#2021CP4006267

60.    In March 2020, Defendant Yummi Crab closed due to COVID-19. When the restaurant reopened in June or July 2020, Chen sent a message through its web portal, Home Base, asking who wanted to return to work. Before Plaintiff Sunde saw the message, she was locked out of Home Base. Plaintiff Sunde texted him to tell him she would like to return to work and needed the job. Though Plaintiff Sunde can see that he read the message, he never responded.

61.    Defendant Yummi Crab fostered a hostile work environment for women that was permissive of unwanted touching and extremely in appropriate comments by male employees to females. Anyone who spoke up faced retaliation. When Plaintiff Sunde spoke up and participated in the February 10, 2020, meeting, she found her hours cut. Chen's refusal to call her back to work (or even to respond) when the restaurant reopened was retaliation for her objecting to sexual harassment and discrimination.

62.    Asians and males received more favorable treatment, which is evident from Chen's statement that the next employee to be promoted to management would be "**one of us**," an Asian male.

63.    Plaintiff Sunde personally missed time at work due to her discomfort and the work environment that this company created for its staff. The company tolerated misogyny and blatant sexual harassment.

### Deductions from Wages

64.    Plaintiffs re-allege the allegations above as if repeated verbatim herein.

65.    Throughout Plaintiffs' employment, Defendants Yummi Crab deducted from Plaintiffs' wages various expenses of doing business, including lost crab crackers and supposed errors in meal orders.

ELECTRONICALLY FILED - 2022 Apr 08 4:47 PM - RICHLAND - COMMON PLEAS - CASE#2021CP4006267

66.    Defendants did not provide written notice at least seven days in advance of such deductions from wages.

67.    Defendant did not provide an itemized statement listing deductions from wages to Plaintiffs.

### FOR A FIRST CAUSE OF ACTION
(Sex Discrimination, Title VII of the Civil Rights Act of 1964)
As to all Plaintiffs and Defendant Yummi Crab

28.    Plaintiffs re-allege the allegations above as if repeated verbatim herein.

29.    Defendant is an "employer" as defined by Title VII of the Civil Rights Act of 1964 as amended by the Equal Protection Opportunity Act of 1973, and the Civil Rights Act of 1991, 42 U.S.C. 2000e, *et seq.* ("Title VII"), because it has employed fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year.

30.    Defendant subjected Plaintiffs to grossly harassing, threatening, and demeaning behaviors and comments from male employees.

31.    Defendant subjected its female employees, including Plaintiffs, to a gender/sex based hostile work environment of severe and pervasive sexual harassment by its managers and employees.

32.    Defendant subjected its female employees, including Plaintiffs, to *quid pro quo* sexual harassment by its managers and employees.

33.    Defendant was on notice of Plaintiffs' complaints of sexual harassment, and yet Defendant tolerated, and indeed sometimes rewarded, male perpetrators.

34.    Defendant favored male employees over female employees for promotions, pay, and other terms of employment.

ELECTRONICALLY FILED - 2022 Apr 08 4:47 PM - RICHLAND - COMMON PLEAS - CASE#2021CP4006267

35.     Defendant allowed male employees to arrive late without consequence, wear ripped jeans without consequence, and say anything they want to female employees without consequence but was much quicker to discipline female employees for these violations.

36.     Defendant cut female employees' shifts before male employees.

37.     Defendant called back male employees before calling back female employees.

38.     These acts constitute discrimination based upon sex in violation of Title VII of the Civil Rights Act of 1964.

39.     Defendant's violations of Title VII were willful.

40.     As a direct result and consequence of this discrimination, Plaintiffs have suffered and will continue to suffer economic damages, including back pay, front pay, loss of fringe benefits, and compensatory damages, including emotional distress, mental anguish, and anxiety.

**FOR A SECOND CAUSE OF ACTION**
(Race Discrimination in Violation of Title VII)
As to all Plaintiffs and Defendant Yummi Crab

28.     Plaintiffs re-allege the allegations above as if repeated verbatim herein.

29.     Defendant created a racially based hostile work environment by subjecting Plaintiffs to racial epithets. When Plaintiff Singletary objected to the racial epithets, nothing was done and they continued.

28.     Defendant favored Asian employees over employees of other races in promotion, scheduling, pay, and terms of employment.

29.     Defendant held Asian employees to lesser disciplinary standards than that

15

ELECTRONICALLY FILED - 2022 Apr 08 4:47 PM - RICHLAND - COMMON PLEAS - CASE#2021CP4006267

to which it subjected Plaintiffs.

30.    Defendant cut female employees' shifts before male employees.

31.    Defendant was on notice of Plaintiffs' complaints of race discrimination, and yet Defendant tolerated, and indeed sometimes rewarded, perpetrators.

32.    These acts constitute discrimination based upon race in violation of Title VII of the Civil Rights Act of 1964.

33.    Defendant's violation of Title VII were willful.

34.    As a direct result and consequence of this discrimination, Plaintiffs have suffered and will continue to suffer economic damages, including back pay, front pay, loss of fringe benefits, and compensatory damages, including emotional distress, mental anguish, and anxiety.

## **FOR A THIRD CAUSE OF ACTION**
(Title VII Retaliation)
As to all Plaintiffs and Defendant Yummi Crab

41.    Plaintiffs re-allege the allegations above as if repeated verbatim herein.

42.    Plaintiffs reported that they had been sexually harassed by employees and management, the reporting of which is a protected activity under Title VII.

43.    Plaintiffs reported race discrimination, the reporting of which is a protected activity under Title VII.

44.    Shortly after Plaintiffs reported and objected to discrimination, Defendant targeted Plaintiffs with reductions in hours, harsh treatment, and termination.

45.    As a direct result and consequence of this discrimination, Plaintiffs have suffered and will continue to suffer economic damages, including back pay, front pay, loss

16

ELECTRONICALLY FILED - 2022 Apr 08 4:47 PM - RICHLAND - COMMON PLEAS - CASE#2021CP4006267

of fringe benefits, and compensatory damages, including emotional distress, mental anguish, and anxiety.

**FOR A FOURTH CAUSE OF ACTION**
(South Carolina Payment of Wages Act)
As to all Plaintiffs and Defendants Yummi Crab, Lin, Chen, Williams, Tan, and Long

46.    Plaintiffs re-allege the allegations above as if repeated verbatim herein.

47.    Plaintiffs assert this claim for damages and declaratory relief under the South Carolina Payment of Wages Act ("Act"), S.C. Code Ann. § 41-10-10, *et seq*.

48.    Pursuant to the Act, Plaintiffs brings this action to recover unpaid wages and monetary damages owed for labor rendered or any compensatory benefits due, including vacation, holiday, sick leave, or any other payments due to Plaintiffs under any employer policy or employment contract.

49.    At all times relevant herein, Defendants Yummi Crab, Lin, Chen, Tan, and Long, were "employers" of the Plaintiffs as defined in S.C. Code Ann. § 41-10-10(1).

50.    All monies owed to Plaintiff by the Defendants Yummi Crab, Lin, Chen, Tan, and Long above constitute "wages" as defined in S.C. Code Ann. § 41-10-10(2).

51.    The above-referenced Defendants deducted wages from Plaintiffs without providing seven days advance written notice, failed to provide a statement of all deductions from wages, failed to pay Plaintiffs all wages when due, and failed to pay Plaintiffs wages by the next payday following their separation from employment.

52.    The above-referenced Defendants' failure to pay Plaintiffs all wages due is willful and without justification.

53.    Plaintiffs are entitled to recovery in the amount equal to three times the full amount of his unpaid wages, prejudgment and post judgment interest, and costs and

ELECTRONICALLY FILED - 2022 Apr 08 4:47 PM - RICHLAND - COMMON PLEAS - CASE#2021CP4006267

reasonable attorney's fees incurred in prosecuting this action pursuant to Section 41-10-80(c).

### FOR A SIXTH CAUSE OF ACTION
(Assault)
As to Plaintiff Singletary and Defendant Williams

28.     Plaintiffs re-allege the allegations above as if repeated verbatim herein.

29.     Defendant Williams' act of going to his car, grabbing his tire iron, and approaching Plaintiff Singletary placed her in reasonable fear of bodily harm.

30.     Defendant Williams' actions were intentional, or alternately, done with reckless disregard of the rights of Plaintiff Singletary.

31.     Defendant Yummi Crab and its management did nothing to address Williams' disturbing threat against Plaintiff Singletary, and instead, reinstated him to his job.

32.     Plaintiff Singletary was subjected to continuing to work with the man who had threatened her with a tire iron, knowing that her employers would not protect her.

33.     Plaintiff Singletary suffered emotional distress, anxiety, and loss of sleep as as a result of Defendant Williams' actions and the failure of her management to protect her.

34.     Plaintiff Singletary suffered damages as a result.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs prays for judgment against Defendants for back pay, front pay, fringe benefits, interests, compensatory damages, punitive damages, treble damages for willful failure to pay wages pursuant to the South Carolina Payment of

ELECTRONICALLY FILED - 2022 Apr 08 4:47 PM - RICHLAND - COMMON PLEAS - CASE#2021CP4006267

Wages Act, and attorneys' fees and costs in amounts determined by this court and/or the jury.

Respectfully submitted,

**BURNETTE SHUTT & McDANIEL, P.A.**

By: s/Jack E. Cohoon
Jack E. Cohoon (SC Bar No. 74776)
912 Lady Street, Second Floor (29201)
Post Office Box 1929
Columbia, South Carolina 29202
(803) 904-7920 (telephone)
(803) 904-7910 (facsimile)
jcohoon@burnetteshutt.law

**DICKEY LAW GROUP, LLC**

By: s/Joseph D. Dickey, Jr.
Joseph D. Dickey, Jr. (SC Bar No. 100064)
440 Center Street
West Columbia, SC 29169
(803) 380-5575 (telephone)
(803) 380-5576 (facsimile)
joseph@dickeylawsc.com

**ATTORNEYS FOR PLAINTIFF**

Columbia, South Carolina

April 8, 2022

# Certificate of Electronic Notification

| Recipients |
| --- |
| **Joseph Dickey**  - Notification transmitted on 04-08-2022 04:47:22 PM. |
| **Jack Cohoon** - Notification transmitted on 04-08-2022 04:47:22 PM. |

ELECTRONICALLY FILED - 2022 Apr 11 8:31 AM - RICHLAND - COMMON PLEAS - CASE#2021CP4006267

****** IMPORTANT NOTICE - READ THIS INFORMATION *****
NOTICE OF ELECTRONIC FILING [NEF]

–

**A filing has been submitted to the court RE:** 2021CP4006267

**Official File Stamp:**          04-08-2022 04:47:16 PM

**Court:**                        CIRCUIT COURT

                                  Common Pleas

                                  Richland

**Case Caption:**                 Krystian Singletary , plaintiff, et al vs King Crab
                                  Boiling Seafood And Bar Inc

**Document(s) Submitted:**        Amended/Amended Summons And Complaint

**Filed by or on behalf of:**     Jack E. Cohoon

This notice was automatically generated by the Court's auto-notification system.

–

**The following people were served electronically:**

                                  Joseph Daniel Dickey, Jr. for Krystian Singletary
                                  et al

                                  Jack E. Cohoon for Krystian Singletary et al

**The following people have not been served electronically by the Court. Therefore, they must
be served by traditional means:**

                                  King Crab Boiling Seafood And Bar Inc

ELECTRONICALLY FILED - 2022 Apr 11 8:31 AM - RICHLAND - COMMON PLEAS - CASE#2021CP4006267